IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SONIA ORDONEZ,<br><br><br><br>Plaintiff,<br><br><br><br><br>v.<br><br>TAYLORSVILLE CITY POLICE<br>DEPARTMENT, et al.,<br><br><br><br>Defendants. | **ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING AS MOOT DEFENDANT WATTERS'S MOTION FOR SUMMARY JUDGMENT; and DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br><br><br>Case No. 2:23-cv-00458-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Before the court are three motions for summary judgment.  The first motion was filed by Defendants Taylorsville City Police Department, Officer Scott Lloyd, Officer Ethan Andrus, Officer Brad Sousley, Officer Espinoza D., Officer Mike Archibeque, and Detective Andrew Kyle (collectively, the Taylorsville Defendants).  (ECF No. 76.)  The second motion for summary judgment was filed by Defendant Jeffery Troy Watters, proceeding pro se.  (ECF No. 83.)  Ms. Ordonez filed a response to Mr. Watters's motion (ECF No. 96), but no reply was

timely filed.  See DUCivR 7-1(A)(4)(B)(iv).  The final motion for summary judgment (ECF No. 97) was filed by Ms. Ordonez.

On June 11, 2025, United States Magistrate Judge Cecilia M. Romero issued a Report & Recommendation (R&R) recommending that the court grant the Taylorsville Defendants' motion for summary judgment and dismiss this case.  (ECF No. 114.)  Magistrate Judge Romero further recommended that the court deny Mr. Watters's motion for summary judgment as moot and that Ms. Ordonez's motion for summary judgment be denied.  (Id.)  On July 21, 2025, Ms. Ordonez filed her objections to the R&R.  (ECF No. 121.)  The court now reviews de novo those portions of the R&R to which Ms. Ordonez objects, see 28 U.S.C. § 636(b)(1)(C), and for the following reasons adopts the R&R (ECF No. 114) in its entirety.

## BACKGROUND

Ms. Ordonez, proceeding in forma pauperis, filed her first complaint on July 14, 2023 (ECF No. 2), an Amended Complaint on August 2, 2023 (ECF No. 9), and a Second Amended Complaint (SAC) on May 17, 2024.  (ECF No. 62.)  At the heart of Ms. Ordonez's SAC is her dispute with her neighbor, Mr. Watters.  The SAC recounts verbal altercations that Ms. Ordonez has had with Mr. Watters over the years and what she characterizes as a "pattern of persistent harassment."  (SAC at 2.)  Throughout her tumultuous relationship with Mr. Watters, Ms. Ordonez had several interactions with officers and detectives from the Taylorsville City Police Department whom she alleges engaged in misconduct "to cover[] up the unlawful conduct of Mr. Watters, with total impunity."  (Id.)  Ms. Ordonez alleges that certain police reports filed in response to her claims were tampered with when the police applied redactions, that the police reports against her contain "false statements," that she was subjected to "malicious prosecution by the local police," and that the officers "threatened" to indict her in an "intimidatory way."

(Id. at 3–4.)  Ms. Ordonez also alleges that Detective Kyle conducted an "unconstitutional" investigatory stop in her neighborhood and threatened to charge her with harassing her neighbor. Ms. Ordonez maintains that "[t]hese retaliatory actions were directly in response" to her exercise of her "First Amendment rights by filing a complaint against the Taylorsville City Police Department."  (Id. at 4.)[1]

Other allegations in the SAC relate to petitions for civil stalking injunctions that Ms. Ordonez and Mr. Watters filed against each other in state court.  (Id. at 5–6.)  Ms. Ordonez alleges that she has evidence "that the policemen knowingly and maliciously [misapplied] the Stalking Injunction Order issued in 2019."  (Id.)  Further, Ms. Ordonez argues that "corrupt policemen" made "false accusations" against her that allowed Mr. Watters to "manipulate[] the judicial system to obtain a stalking order against" her.  (Id. at 6.)  This in turn allegedly caused the state court to deny Ms. Ordonez's request for a "stalking injunction order against Mr. Watters."  (Id.)  Based on these allegations, Ms. Ordonez asserts that the Defendants are guilty of "[d]ue process and equal protection violations by inadequately considering [her] complaints, especially those involving racial hate, indicating potential discrimination."  (Id. at 7.)

In the SAC, Ms. Ordonez lists eleven claims, which the court numbers as follows: 1) "malicious prosecution and/or aggravated malicious prosecution and abuse of power"; 2) "tampering with evidence"; 3) "fifth, eighth, and fourteenth amendment violations"; 4) "failure to protect under applicable state and federal laws"; 5) "conspiracy and cover-up

---

[1] Ms. Ordonez also contends that the "Taylorsville City Administration, acting under color of state law, enforced local ordinances in a discriminatory manner, violating [her] constitutional rights."  (ECF No. 62 at 4.)  But Ms. Ordonez did not name the "Taylorsville City Administration" or its members as defendants.  For those reasons, the court does not consider any allegations related to the Taylorsville City Administration's enforcement of local ordinances.

aggravated (conspiracy to violate civil rights, obstruction of justice)"; 6) "violations of court orders"; 7) "intimidation and threats"; 8) "violations of civil rights"; 9) "conspiracy to deprive constitutional rights under color of state law [in] violation of 42 U.S.C. § 1983"; 10) "corruption and/or for aggravated corruption, by covering up Mr. Watters's illegal conduct committed in civil and criminal matters"; and 11) "intimidation and/or aggravated intimidation of the Plaintiff." (Id. at 6–8.) Under her claim for "Intimidation and Threats," Ms. Ordonez alleges that "Officer Scott Lloyd threatened to indict [her] for the third time criminally" and Detective "Kyle threatened … to indict [her]." (Id. at 7.) Ms. Ordonez provides no other indication specifying which of her claims are asserted against each respective Defendant.[2]

Fact discovery in this case ended on November 11, 2024. Despite obtaining multiple extensions of the discovery deadlines, Ms. Ordonez failed to take, or even attempt to take, depositions of any Defendant or other relevant witness. (E.g., Order Granting Motion for Extension dated October 7, 2024, ECF No. 68.) Once fact discovery concluded, the Taylorsville Defendants filed their January 30, 2025 motion for summary judgment. (ECF No. 76.) Ms. Ordonez filed a response to this motion, along with approximately 36 pages of exhibits, and a USB drive containing videos and pictures that Ms. Ordonez asserts support her claims. (ECF Nos. 86, 86-1, 89.) In her opposition to the Taylorsville Defendants' motion for summary

---

[2] Ms. Ordonez's claims for "malicious prosecution," "fifth, eight, and fourteenth amendment violations," and "conspiracy to deprive constitutional rights under color of state law [in] violation of 42 U.S.C. § 1983" are federal law claims arising under the United States Constitution. (See SAC at 6–8.) The court finds that these constitutional claims are directed at both the Taylorsville Defendants and Mr. Watters. Ms. Ordonez's claims for "tampering with evidence," "failure to protect," "conspiracy and cover-up," "violations of court orders," "corruption," and "intimidation" arise under state law. (Id.) The court finds that Ms. Ordonez's state law claims for "tampering with evidence," "failure to protect," "violations of court orders," and "corruption" are directed at only the Taylorsville Defendants, and that her state law claim for "conspiracy and cover-up" is directed at both the Taylorsville Defendants and Mr. Watters. (Id.)

judgment, Ms. Ordonez did not include citations identifying which documentary evidence

supported her claims.  (ECF No. 86.)  The exhibits attached to Ms. Ordonez's opposition

include:

- Multiple copies of a police report dated August 30, 2019, detailing Ms. Ordonez's call to the Taylorsville Police Department to report that Mr. Watters stood outside of her home acting like a monkey and making obscene hand gestures in violation of his "probation."  (ECF No. 86-1 at 3, 5, 9.)  Ms. Ordonez told the police she had footage of the incident.  (Id. at 4, 6, 10.)  Certain words are redacted in some versions of the police report.  (Compare id. at 3 (version of the police report redacting just one word), with id. at 5 (version of the police report redacting the name of the officer who wrote the report, Officer Sousley, along with Mr. Watters's name).)

- A police report dated September 5, 2019, detailing Ms. Ordonez's stalking injunction against Mr. Watters.  (Id. at 7, 11.)

- An email from Ms. Ordonez to Officer Andrus dated November 5, 2020, claiming that Mr. Watters had violated Ms. Ordonez's protective order by "illuminating [her] entire house's front" with a "large flashlight" and "walking too close to [her] van."  (Id. at 15–17.)

- A police report written by Officer Andrus on November 5, 2020, relaying Ms. Ordonez's police report about Mr. Watters and Mr. Watters's response, noting that "no charges will be filed" and marking the "case complete."  Officer Andrus further wrote that Ms. Ordonez had not sent the Police Department the video surveillance that she claimed would prove that Mr. Watters had violated her stalking injunction against him.  (Id. at 17–18.)  Officer Andrus's police report contains redactions that omit private identifying information, including Mr. Watters's home address.

- A police report written by Detective Sanderson dated November 6, 2020, detailing 1) Ms. Ordonez's and Mr. Watters's civil stalking injunctions against one another; and 2) several complaints that the Taylorsville Police Department received from Mr. Watters claiming that Ms. Ordonez violated the stalking injunction against her by "following his vehicle in and/or out of the neighborhood … driving a vehicle past his residence … taking photographs of him from their front yard … 'flipping the bird' at [him] … and [] confronting him verbally when he takes daily walks around the neighborhood with his dog(s)."  Detective Sanderson wrote that he had not received additional complaints from Ms. Ordonez about Mr. Watters aside from her November 5, 2020 report.  Detective Sanderson also noted that the "dispute between Watters, and Ordonez is intensifying, and court intervention is likely required."  Detective Sanderson closed the case and wrote that "[d]ue to a lack of evidence supporting the accuracy of one account of events over the other, and the lack of any witnesses that could remotely be considered independent, I will be screening stalking

injunction violation charges against both Watters, and Ordonez, with the Salt Lake County District Attorney's Office.  A violation screening against Ordonez will be submitted using DAO number 20019831, and a violation screening against Watters will be submitted using DAO 20019829."  (Id. at 23.)

- An email from Ms. Ordonez to Detective Sanderson and the Taylorsville City Police Department dated November 24, 2020, attaching three videos and several photos.  Ms. Ordonez wrote that the videos show Mr. Watters's "wrongful doing," including "walking too close to [her] vehicle and around [her] house[,] [b]ullying [her and] annoying her."  (Id. at 19–22.)

- A police report written by Officer Scott Warenski dated November 30, 2020, noting that the Salt Lake County District Attorney's Office "declined the requested charges on Jeffery T. Watters," and requesting the case be referred to the Taylorsville Prosecutor.  (Id. at 24–25.)

- Minutes from a July 15, 2021 Bench Trial and Order of Dismissal from the Taylorsville Justice Court in Salt Lake County indicating that the City's motion to dismiss its case against Ms. Ordonez was granted with all charges dismissed. (Id. at 29.)

- A misdemeanor complaint filed by the State of Utah (Taylorsville City) against Ms. Ordonez charging her with emergency reporting abuse and providing false information to law enforcement.  (Id. at 30.)

- Ms. Ordonez's November 2020 call history on Xfinity Connect.  (Id. at 31.)

- A default order in a case by the City of Taylorsville against Ms. Ordonez for "violations pursuant to the City of Taylorsville Code provisions 11.20.080.B (24-hour parking) and 13.02.150 (Conservation of value, 9.08.030.C. I4 - Nuisance lnop)."  (Id. at 33–36.)  The state court's findings of fact determined that Ms. Ordonez had been given numerous opportunities to comply with the Code but she "failed to avail herself of any of the proposed resolutions" and "refused to commit to the City that she would maintain [her] property in compliance."  (Id. at 34–35.)  The state court granted the City of Taylorsville a default judgment of $15,000 against Ms. Ordonez.  (Id. at 35.)

On April 3, 2025, Ms. Ordonez filed a cross-motion for summary judgment against the Taylorsville Defendants, submitting another USB drive containing ten video clips, all of which allegedly relate to her interactions with Mr. Watters.  (ECF Nos. 97, 98.)  These video files include:

- A video dated August 17, 2019, showing a man, presumably Mr. Watters, walking three dogs on the sidewalk by Ms. Ordonez's home.  (ECF No. 99.)

- A video dated November 5, 2020, showing an unidentified truck, presumably driven by Mr. Watters, slowly driving by Ms. Ordonez and directing a flashlight at her home.  (Id.)

- A video dated November 5, 2020, showing a man, presumably Mr. Watters, walking three dogs on the road outside Ms. Ordonez's home.  (Id.)

- A fourteen-minute video that appears to compile footage from different dates showing: 1) several women walking by Ms. Ordonez's home; 2) a screeching noise; 3) a car driving out of a neighbor's driveway; 4) an unidentified individual leaving Ms. Ordonez's property to walk down the street; 5) an unidentified man, presumably Mr. Watters, walking several dogs across the street from Ms. Ordonez's home; 6) several instances where an unidentified man, presumably Mr. Watters, peacefully walks his dogs on the sidewalk in front of Ms. Ordonez's home; 7) an unidentified man, presumably Mr. Watters, walking several dogs on the sidewalk in front of Ms. Ordonez's home and making unidentifiable hand gestures; 8) an unidentified woman entering a car parked in Ms. Ordonez's driveway and driving away; 9) several trucks driving by Ms. Ordonez's home; 10) a man, presumably Mr. Watters, biking across the street from Ms. Ordonez's home.  (Id.)

- A two-minute video showing 1) a man, presumably Mr. Watters, walking his dog down the sidewalk in front of Ms. Ordonez's home; and 2) a truck driving slowly down Ms. Ordonez's street, honking once.  (Id.)

- A one-minute video showing a man, presumably Mr. Watters, riding a motorcycle down the street.  (Id.)

- A nine-second video showing a truck, presumably driven by Mr. Watters, parked outside Ms. Ordonez's home.  (Id.)

- A video showing an unidentified man, presumably Mr. Watters, walking by Ms. Ordonez's home twice.  (Id.)

- A nine-minute video showing two individuals standing and talking on the sidewalk outside Ms. Ordonez's home.  One man, possibly Mr. Watters, gets into a verbal altercation with an unidentified woman, presumably Ms. Ordonez.  The woman tells the man to leave her property and accuses him of harassing her.  The man eventually leaves, and several unintelligible voices continue off-camera for the remainder of the video.  (Id.)

- A video of an unidentified man, presumably Mr. Watters, driving his truck slowly by Ms. Ordonez's home.  When the videographer, presumably Ms. Ordonez, approaches the truck, the truck backs up quickly and then accelerates

> forward.  The truck drives down the block and the driver steps outside to film the
> woman on his cellphone before driving further away and parking.  (Id.)

There is no way to determine who is being depicted in each of the videos detailed above.

However, Ms. Ordonez's descriptions indicate that she believes that these videos show Mr.

Watters is the one harassing her.

The Taylorsville Defendants filed an opposition to Ms. Ordonez's motion for summary

judgment.  (ECF No. 103.)  Ms. Ordonez's reply attached 138 pages of documentary exhibits

along with a third USB drive containing additional videos and pictures that Ms. Ordonez asserts

support her claims, including security camera footage from outside her home, her

correspondence with several officers from the Taylorsville Police Department, lightly redacted

and unredacted police reports describing her and Mr. Watters's emergency calls to the

Taylorsville Police, and filings from a case between Ms. Ordonez and Mr. Watters in the Third

Judicial District Court.  (ECF No. 109; Pl.'s Videos in Support of Reply, ECF No. 110.)  In her

Opposition to the Taylorsville Defendants' Motion, Ms. Ordonez claims that the city's dismissal

of the charges against her and its redactions of its August 26, 2019 police report show that the

charges filed against her lacked merit and were filed as retaliation for her prior complaints.

On February 21, 2025, Mr. Watters filed a motion for summary judgment, requesting that

Ms. Ordonez's claims against him be dismissed.  (ECF No. 83.)  Ms. Ordonez argues that Mr.

Watters's motion is "both untimely and fails to meet the burden requirement for summary

judgment."  (ECF No. 96 at 1.)  Ms. Ordonez's response to Mr. Watters's motion includes an

additional 117 pages of exhibits.  (ECF No. 96-1.)

## LEGAL STANDARD

Summary judgment allows the court to determine "whether there is a need for trial—

whether, in other words, there are any genuine factual issues that properly can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(a)). Material facts are those that might affect the outcome of the case. <u>See</u> <u>Birch v. Polaris Indus., Inc.</u>, 812 F.3d 1238, 1251 (10th Cir. 2015) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Once the movant shows there is an absence of a genuine dispute of material fact, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at, 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u> "If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted." <u>See</u> <u>Cone v. Longmont United Hosp. Ass'n</u>, 14 F.3d 526, 533 (10th Cir. 1994) (citations omitted). Put simply, a plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986).

Because Ms. Ordonez and Mr. Watters are acting pro se, the court liberally construes their filings and holds each of them "to a less stringent standard than formal pleadings drafted by lawyers. <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991). But pro se litigants are still held to "the same rules of procedure that govern other litigants." <u>Garrett v. Selby, Connor, Maddux & Janer</u>, 425 F.3d 836, 840 (10th Cir. 2005) (quoting <u>Nielsen v. Price</u>, 17 F.3d 1276, 1277 (10th Cir. 1994)). Accordingly, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1175 (10th Cir. 1997).

## ANALYSIS

Ms. Ordonez objects to the R&R on the grounds that it "overlooks or mischaracterizes evidence showing that the Defendants, under color of state law, engaged in a racially motivated pattern of harassment, retaliation, malicious prosecution, fabrication of evidence, and deprivation of constitutional rights in violation of 42 U.S.C. 1983, federal regulations, and the U.S. Constitution." (ECF No. 121 at 1–2.)  Additionally, Ms. Ordonez claims that she has "submitted extensive evidence … demonstrating disputes of material fact that preclude summary judgment." (Id. at 2.)  She contends that this evidence shows that the Defendants maliciously prosecuted her in violation of the Fourth and Fourteenth Amendment "based on fabricated and misleading police reports, suppression of exculpatory video evidence, and collusion with [Mr. Watters]," a private individual whom she alleges acted jointly with the Taylorsville Defendants to deprive her of constitutional rights."  (Id.)

### I.  The Taylorsville Defendants' Motion for Summary Judgment

The Taylorsville Defendants argue that the SAC should be dismissed on several grounds. (ECF No. 76.)  First, they assert that Ms. Ordonez failed to sufficiently allege or demonstrate any evidence of a constitutional violation under the Fifth, Eighth, or Fourteenth Amendments by any of the Taylorsville Defendants.  (Id. at 7–9.)  Second, the Taylorsville Defendants assert that Ms. Ordonez's state law claims suffer from similar deficiencies as her constitutional claims.  Third, the Taylorsville Defendants argue that Ms. Ordonez's state law claims against them are barred by the Utah Governmental Immunity Act (UGIA).  See Utah Code §§ 63G-7-101 to -904.3.  The court addresses each argument in turn.

#### A.  Constitutional Claims Against the Taylorsville Defendants

The court first addresses the Taylorsville Defendants' argument that the SAC fails to allege a plausible constitutional violation under the pleading standards imposed by Rule 8 of the

Federal Rules of Civil Procedure.  (ECF No. 86 at 7–9.)  "The twin purposes of a complaint are to give the opposing party fair notice of the basis for the claims against them so that they may respond and to allow the Court to conclude that the allegations, if proven, show that the plaintiff is entitled to relief."  Fletcher v. Williams, 2022 WL 3153906, at *2 (D. Colo. Aug. 8, 2022), report and recommendation adopted, 2022 WL 4591809 (D. Colo. Sept. 30, 2022), aff'd, 2023 WL 6307494 (10th Cir. Sept. 28, 2023); see also Monument Builders of Greater Kansas City, Inc. v. Am. Cemetery Ass'n of Kan., 891 F.2d 1473, 1480 (10th Cir. 1989) (finding that allegations that the defendants "assigned prisoners to … forced labor" were "conclusory and devoid of supporting facts" and therefore implausible).  Rule 8 is designed to ensure "that defendants enjoy fair notice of what the claims against them are and the grounds upon which they rest." Lakhumna v. Sgt. Messenger, No. 4:18-cv-81-DN, 2019 WL 2285775, at *2 (D. Utah May 29, 2019) (applying the Rule 8 pleadings standards to dismiss a pro se plaintiff's claims) (citations omitted).

While Ms. Ordonez is correct in arguing that the pleadings standards are not "heightened" for 42 U.S.C. § 1983 claims (ECF No. 121 at 11), the Tenth Circuit nonetheless explains that it is "particularly important" that the plaintiff in a § 1983 case meet the pleading standards outlined in Rule 8 of the Federal Rules of Civil Procedure because the defendants in these cases are government agencies and government actors sued in their individual capacities." Robbins v. Oklahoma, 519 F.3d 1242, 1249–50 (10th Cir. 2008).  Accordingly, § 1983 "complaint[s] [must] make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." Id. at 1249–50.  Where the "complaint fails to isolate the allegedly unconstitutional acts of each defendant," it is subject to dismissal because

11

each defendant should be given "adequate notice as to the nature of the claims against each."
See id.

Under these pleading standards, the court finds that Ms. Ordonez's § 1983 constitutional claims against the Taylorsville Defendants are implausibly alleged, lacking specific facts. Ms. Ordonez alleges that her § 1983 claims arise under the Fifth, Eighth, and Fourteenth Amendments (SAC at 6–8), but she does not identify which constitutional claims are brought against which of the Taylorsville Defendants—and more importantly, she fails to identify how each of the Taylorsville Defendants violated her constitutional rights. For example, it is unclear from the SAC which Defendants "knowingly fil[ed] false charges" against Ms. Ordonez. (ECF No. 86 at 6; SAC at 2–3.) Ms. Ordonez claims that the Taylorsville Defendants filed false police reports and gave false testimony against her in court. (SAC at 3–4.) But she does not identify which specific testimony is false. Similarly, while Ms. Ordonez claims her free speech rights were violated, the SAC does not reveal how the Taylorsville Defendants "retaliated" against her for engaging in protected speech. (ECF No. 86 at 6.) Indeed, Ms. Ordonez's only officer-specific allegations are that Detective Kyle and Officer Lloyd threatened to indict or charge her and "intimidated her" at a state court hearing held on November 9, 2023. (SAC at 4–5.) But Ms. Ordonez does not identify what these officials said or did to threaten and intimidate her. And finally, while the SAC accuses the Taylorsville City Administration of enforcing local ordinances in a discriminatory manner, the Administration is not a defendant in this case. (Id. at 4.) For these reasons, the court finds that Ms. Ordonez fails to state a claim that the Taylorsville Defendants violated her constitutional rights.

But even if Ms. Ordonez's § 1983 claims accusing the Taylorsville Defendants of unconstitutional conduct were sufficiently alleged, they must also be dismissed on the basis that

they are unsupported by the evidentiary record—meaning that no reasonable juror could, upon reviewing the evidence provided and cited, rule in Ms. Ordonez's favor against the Taylorsville Defendants for violating Ms. Ordonez's constitutional rights.  See Anderson, 477 U.S. at 248.

Ms. Ordonez submits several videos along with her opposition to the Taylorsville Defendants' motion for summary judgment, arguing that the contents reveal the Taylorsville Defendants' unconstitutional abuses against her even if her pleadings do not provide adequate allegations.  (See, e.g., ECF No. 99; ECF No. 110.)  But the videos merely show Ms. Ordonez's ongoing conflict with her neighbors—they do not support Ms. Ordonez's claims that the Taylorsville Defendants engaged in any unreasonable, unconstitutional, or discriminatory conduct in violation of the Fifth, Eighth, and Fourteenth Amendments.  (See id.)

The only video in the record that appears to feature a Taylorsville Defendant is a video that depicts an officer, presumably Detective Kyle, pulling over a car in which Ms. Ordonez was a passenger.  Detective Kyle stated that he stopped Ms. Ordonez because a neighbor (not Mr. Watters) called the police to report that the car's occupants were harassing him by driving around in a menacing manner and making explicit hand gestures at him.  Ms. Ordonez claims this stop was unconstitutional.  (ECF No. 121 at 12; SAC at 2.)  Investigatory stops, like this one, are considered "unconstitutional" if the officer lacked any "reasonable suspicion to believe that criminal activity may be afoot."  United States v. Simpson, 609 F.3d 1140, 1146 (10th Cir. 2010) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002)).  Courts must ask "whether the facts available to the detaining officer, at the time, warranted an officer of reasonable caution in believing the action taken was appropriate."  Mocek v. City of Albuquerque, 813 F.3d 912, 923 (10th Cir. 2015) (quoting United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009)).  To overcome summary judgment, Ms. Ordonez must provide "more than a mere scintilla of

evidence" that Detective Kyle lacked reasonable suspicion to conduct the traffic stop.  See

Aubrey v. Koppes, 975 F.3d 995, 1004 (10th Cir. 2020) (quoting Rocky Mountain Prestress LLC

v. Liberty Mut. Fire Ins. Co., 960 F.3d 1255, 1259 (10th Cir. 2020)).  She has not done so, nor

has she provided any legal support for her argument that an investigatory stop or charge of

harassment cannot be premised on a neighbor's complaint.

Ms. Ordonez also submits documentary evidence in support of her claims, including

email chains, police reports, civil stalking injunctions, and dismissal orders, cataloguing her

interactions with the Taylorsville Police Department over the last six years.  She argues that the

evidence shows that the police "manufacture[d] baseless criminal charges against her[,]"

"deprived [her] of [her] constitutional rights under the Fourth and Fourteenth Amendments[,]

and violated federal law prohibiting conspiracy under color of state law to deny civil rights."

(ECF No. 121 at 8–9.)  But from these documents, any reasonable juror would conclude that the

Taylorsville Defendants seriously addressed the conflict between Ms. Ordonez and Mr. Watters

and investigated Ms. Ordonez's claims.

For example, on April 5, 2019, Ms. Ordonez reported to the Taylorsville Police

Department that she had recorded Mr. Watters throwing rocks at her van.  (Id. at 7.)  While

several of the videos show Mr. Watters walking near Ms. Ordonez's home, none of the videos

show Mr. Watters throwing rocks.  It appears that each time Ms. Ordonez contacted the

Taylorsville Police Department with complaints about Mr. Watters and others, the police officers

responded as soon as they could and requested any evidence available.  (See id. at 8 (asking Ms.

Ordonez to send any tangible evidence, surveillance footage, and photos of the incidents

described in Ms. Ordonez's January 31, 2019, March 7, 2019, and April 5, 2019 emails); id. at

12 (same); id. at 14 (same).)  Because the Taylorsville Defendants were unable to substantiate

Mr. Watters's and Ms. Ordonez's competing narratives, the Taylorsville Defendants referred the issue to the appropriate authorities at the Salt Lake County District Attorney's Office.  (ECF No. 86-1 at 23.)

Ms. Ordonez also claims that she was maliciously prosecuted when she was charged with two misdemeanors for "emergency reporting abuse" and "providing false information to officers."  She argues that the police reports documenting her calls to the station contain a "false and malicious description of the facts" and that she was "found innocent of all charges."  (ECF No. 62 at 3–4; ECF No. 86 at 30.)  Ms. Ordonez contends that the Taylorsville Defendants' malicious prosecution of her was unconstitutional because it was based on her race and in retaliation for her filing this case against the Taylorsville Defendants.  (ECF No. 86 at 4 (citing Taylor v. Meacham, 82 F.3d 1556, 1560 (10th Cir. 1996) ("[The Tenth Circuit'] has recognized the viability of a malicious prosecution claim under § 1983.")))  But Ms. Ordonez's Opposition notably fails to specify or point to evidence demonstrating how the police reports, charges, and testimony against her were falsified or discriminatory.  Further, there is no evidence supporting Ms. Ordonez's claim that Detective Kyle, along with "Code Enforcement official Keith Stephens … collaborated conspiratorially … sharing information and acting in a manner exceeding the bounds of [their] official duties" at a state court hearing conducted on November 9, 2023.  It is unclear what information, if any, Detective Kyle shared with Mr. Stephens or how the two officials "exceeded" their duties.  Finally, Ms. Ordonez presents no evidence to support her claim that the Taylorsville Defendants acted with malice towards Ms. Ordonez.

Ms. Ordonez further takes issue with the fact that the Taylorsville Defendants redacted certain identifying information in the police reports that detail her calls to the Taylorsville Police Department.  (See ECF No. 62 at 3–5.)  But the court has no reason to believe that these

redactions constitute anything but a routine practice, rather than an effort to build a false case against Ms. Ordonez in violation of her constitutional rights.  And upon reviewing the reports in question, the court finds that only minor details, like witnesses' names and home addresses, have been redacted.  Further, the court notes that some versions of the police reports that Ms. Ordonez submits are largely or wholly unredacted.  (See, e.g., ECF No. 86-1 at 3, 4 (largely unredacted versions of the Taylorsville Police Department's August 26 and August 30, 2019 police reports).)

Finally, Ms. Ordonez accuses the Taylorsville Defendants of "knowingly and maliciously" failing to enforce her stalking injunction against Mr. Watters.  (ECF No. 62 at 7.) As an initial matter, it is unclear from the SAC and evidence provided in support of Ms. Ordonez's opposition how the police mishandled her stalking injunction against Mr. Watters.  In any event, these constitutional law claims must be dismissed for three reasons.

First, the court acknowledges that Utah law requires law enforcement officers to "arrest an alleged perpetrator for a violation of any of the provisions of an ex parte protective order or protective order."  Utah Code Section 77-36-2.4(1).  But even so, "it is well established that a § 1983 claim may not be based on a violation of state law."  Blake-Brock v. Sandy City Police, No. 2:10-cv-570-TS, 2012 WL 5397992, at *3 (D. Utah Nov. 2, 2012); see also Becker v. Kroll, 494 F.3d 904, 917 (10th Cir. 2007) ("A state's violation of its own law, however, is not sufficient, in and of itself, to create a federal constitutional violation."); Stanko v. Maher, 419 F.3d 1107, 1117 (10th Cir. 2005) ("An action under § 1983, however, cannot be maintained on the basis of alleged violations of state law.").  Accordingly, Ms. Ordonez's constitutional claim against the Taylorsville Defendants cannot be based on the Taylorsville Defendants' alleged violations of Utah Code Section 77-36-2.4(1).

16

Second, the court finds that Ms. Ordonez § 1983 claim is also improper under the Fifth Amendment Due Process Clause.  Ms. Ordonez contends that the Taylorsville Defendants engaged in "potential discrimination" against her when they failed to enforce her injunction. (ECF No. 62 at 7.)  As the Tenth Circuit explained in Watson v. City of Kansas, "[a]lthough there is no general constitutional right to police protection, the state may not discriminate in providing such protection."  857 F.2d 690, 694 (10th Cir. 1988).  To succeed on her Fifth Amendment claim, Ms. Ordonez "has the burden of demonstrating [the Taylorsville Defendants'] discriminatory intent."  Id.  But Ms. Ordonez has not carried her evidentiary burden because she has not provided any proof that discrimination was a motivating factor of the City, or that the City had a policy or custom of discrimination.  Id.  The evidence before the court indicates that the Taylorsville Defendants did not take further action against Mr. Watters because it had received competing narratives from Ms. Ordonez and Mr. Watters.  There is no evidence indicating that the Taylorsville Police Department had a racially discriminatory police or practice.

Third, and most importantly, Ms. Ordonez's Fifth Amendment claim fails under the public duty doctrine, which holds that a police officer or department's failure to enforce a protective order cannot be the basis of a federal due process claim.  See Castle Rock v. Gonzales, 545 U.S. 748, 766 (2005) (holding that police departments have substantial discretion when enforcing protective orders and that "[i]t is by no means clear that an individual entitlement to enforcement of a restraining order could constitute a 'property' interest for purposes of the Due Process Clause").  This is because "state actors are liable for their own acts, and not the violent acts of third parties."  Christiansen v. City of Tulsa, 332 F.3d 1270, 1279 (10th Cir. 2003) (citation omitted).  Accordingly, "a State's failure to protect an individual against private

17

violence simply does not constitute [an actionable] violation of the Due Process Clause." Id. (citations omitted); see, e.g., Motlagh v. Gibic, No. 2:22-cv-635-TC-DBP, 2024 WL 4135480, at *3 (D. Utah Sept. 10, 2024) (applying Castle Rock and finding that plaintiff failed to state a claim under federal law for violation of either substantive or procedural due process where police officer "refused to enforce the mutual protective order").

In sum, there are no issues of material fact upon which a jury could find in Ms. Ordonez's favor on her constitutional claims against the Taylorsville Defendants.

### B. State Law Claims Against the Taylorsville Defendants

Ms. Ordonez's state law claims against the Taylorsville Defendants include: "tampering with evidence, conspiracy, violations of a court order, intimidation, failure to protect, and corruption." (See ECF 62 at 6–8; ECF No. 76 at 21.) The Taylorsville Defendants contend that these state law claims fail because they are insufficiently pled, unsupported by the evidentiary record, and barred by the UGIA, Utah Code Ann. § 63G-7-102. (Id.) The court finds that Ms. Ordonez's state law claims against the Taylorsville Defendants are barred by the UGIA and therefore does not address the other bases for dismissal.

The UGIA grants governmental entities and their employees "broad, background immunity from injuries that result due to the exercise of a governmental function." Pinder v. Duchesne Cnty. Sheriff, 478 P.3d 610, 623 (Utah Ct. App. 2020) (citing Wheeler v. McPherson, 40 P.3d 632, 635 (Utah 2002)); see also Dettle v. Richfield City, No. 2:13-cv-357-DAK, 2014 WL 4354424, at *8 (D. Utah Sept. 2, 2014) (stating that, in accordance with the UGIA, the plaintiffs "have no right to sue Utah or its political subdivisions under Utah law unless Utah has consented to such suit through its constitution or its legislature"). To determine if governmental immunity has been waived, Utah courts examine "(1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular

activity; and (3) whether there is an exception to that waiver." Graves v. Utah Cnty. Gov't, 551

P.3d 1029, 1033 (Utah Ct. App. 2024) (quoting Van de Grift v. State, 299 P.3d 1043 (Utah

2013)).  Further, to sue a governmental official or entity where governmental immunity is

waived, "potential plaintiffs must first provide, as a prerequisite to filing suit, formal 'notice of

claim' to the appropriate governmental official."  Wheeler, 40 P.3d at 635; see also Pinder, 478

P.3d at 623.  When plaintiffs fail to provide formal notice of their claim against state actors, the

court "lacks subject matter jurisdiction over any claims they later bring."  Pinder, 478 P.3d at

623 (citing Amundsen v. Univ. of Utah, 448 P.3d 1224 (Utah 2019)).

There is no dispute that policing is a governmental function.  And under the UGIA,

governmental immunity is waived for "any injury proximately caused by a negligent act or

omission of an employee committed within the scope of employment," Utah Code § 63G-7-

301(2)(i).  But there is an exception to this waiver where the plaintiff's "injury arises out of or in

connection with . . . assault, battery, false imprisonment, false arrest, malicious prosecution, . . .

abuse of process, . . . deceit, . . . infliction of mental anguish, or violation of civil rights," id. at

§ 63G-7-201(4).  Based on her allegations, Ms. Ordonez's state law claims "arises out of or in

connection with" malicious prosecution, deceit, abuse of process, or a violation of her civil

rights.  Therefore, even if Ms. Ordonez's claims were the result of the Taylorsville Defendants'

"negligent act or omission," waiving their governmental immunity, those claims would

nonetheless fall within the waiver exception.  Accordingly, Ms. Ordonez's state law claims are

barred by the UGIA.

Ms. Ordonez counters that her claims fall under an exception to the Taylorsville

Defendants' governmental immunity based on her assertion that the Taylorsville Defendants'

"willful misconduct" was in performed in "bad faith."  (See ECF No. 86 at 6 (citing Utah Code

Section 63G-7-202(3)(c).)  As an initial matter, the court notes that the UGIA has no "bad faith" exception to governmental immunity.  But even if Ms. Ordonez stated plausibly that the Taylorsville Defendants are liable because they violated Ms. Ordonez's rights "willfully," Ms. Ordonez's claims must nonetheless be dismissed because, as Ms. Ordonez does not dispute, she never filed a "notice of claim" with the appropriate government entity.  Accordingly, even if the legislature waived immunity and no waiver exception applies, the court lacks jurisdiction over Ms. Ordonez's state law claims against the Taylorsville Defendants.  See Pinder, 478 P.3d at 623.

In sum, the court grants in full the Taylorsville Defendants' motion for summary judgment.

## II.    Ms. Ordonez's Claims Against Mr. Watters

Ms. Ordonez asserts that Mr. Watters supplied false information to the authorities in conjunction with the Taylorsville Defendants' malicious prosecution of Ms. Ordonez, which she claims violates her constitutional rights.  (ECF No. 96.).  Further, Ms. Ordonez alleges that Mr. Watters is liable for leading a conspiracy with the Taylorsville Defendants in violation of state law.  (ECF No. 62 at 6–8; ECF No. 121 at 2–4, 6.)

### A.  Constitutional Claims Against Mr. Watters

As discussed above, Ms. Ordonez fails to plead or support her pleadings with evidence showing that she was deprived of her constitutional rights through malicious prosecution. Accordingly, her constitutional claims against Mr. Watters are dismissed for the same reasons as her constitutional claims against the Taylorsville Defendants.

Further, the court finds sua sponte that Ms. Ordonez's constitutional claims against Mr. Watters must also be dismissed because she fails to adequately allege facts or indicate any record evidence showing that Mr. Watters is a "state actor" who can be held liable under § 1983 for

depriving Ms. Ordonez of her constitutional rights.  "The provisions of § 1983 only apply to persons who both deprive others of a right secured by the Constitution or laws of the United States and act under color of a state statute, ordinance, regulation, custom or usage."  Carey v. Cont'l Airlines, Inc., 823 F.2d 1402, 1404 (10th Cir. 1987).  The state actor requirement "reflects judicial recognition of the fact that 'most rights secured by the Constitution are protected only against infringement by governments.'"  Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982) (quoting Flagg Bros. Inc. v. Brooks, 436 U.S. 149, 156 (1978)).  "This fundamental limitation on the scope of constitutional guarantees 'preserves an area of individual freedom by limiting the reach of federal law' and [also] 'avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.'"  Edmonson v. Leesville Concrete Co., 500 U.S. 614, 619 (1991) (quoting Lugar, 457 U.S. at 936–37).  Under the state action doctrine, "the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State."  Lugar, 457 U.S. at 937.  In other words, when a constitutional claim is asserted against a private individual, like Mr. Watters, a plaintiff must establish that the individual is either a "state actor" under color of law or "jointly engaged with state officials in the conduct allegedly violating the federal right."  Carey, 823 F.2d at 1404.

To determine whether a private individual or entity is a "state actor," courts must examine whether "the relation between a nominally private party and the alleged constitutional violation [is] sufficiently close as to consider the nominally private party a state entity for purposes of section 1983 suit[.]"  Anaya v. Crossroads Managed Care Sys., Inc., 195 F.3d 584, 596 (10th Cir. 1999).  The state actor assessment is a "necessarily fact-bound inquiry."  Lugar, 457 U.S. at 939.  The Supreme Court has identified several fact patterns in which private conduct can fairly be attributed to the State to impose liability under § 1983.  For example, challenged

activity may be classified as "state action" where "the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)); see also Brentwood Academy v. Tennessee Secondary School Athletic Assn., 531 U.S. 288 (2001).  Joint action between a private individual and the state can also be established "if the private entity [or individual] has exercised powers that are 'traditionally the exclusive prerogative of the State.'"  Blum, 457 U.S. at 1005.  State action has been established where the private actor operates as a "willful participant in joint activity with the State or its agents," or when "a nominally private entity ... is controlled by an agency of the State."  Brentwood, 531 U.S. 288 (citations omitted) (holding that a state agency acting as trustee for a private trust violated the Fourteenth Amendment when it refused to allow admission of black applicants to a college in accordance with the private trust that created it); see also Evans v. Newton, 382 U.S. 296, 299–302 (1966) (holding that a private trust's park established for the use of only white persons was a state actor for purposes of the Fourteenth Amendment because "when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations").  And state action has also been found where the government is heavily involved in the management or control of the private entity. See Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. 374, 400 (1995) (holding that Amtrak, a corporation created and controlled by the government, was an agent of the government).

Ms. Ordonez directs her constitutional claim not just against the Taylorsville Defendants—clearly state actors—but also against Mr. Watters, a "private" individual.  She argues that Mr. Watters conspired with the Taylorsville police officers in a joint effort to harass

and charge her, therefore "prosecut[ing her] under color of state law" in violation of the United States Constitution.  Ms. Ordonez alleges that Mr. Watters made false statements to the police which the police relied upon to initiate baseless charges against her and that the Taylorsville Defendants actively covered up Mr. Watters's "racially motivated conduct" against her, "including intimidation, racial slurs, and evident violations of a stalking injunction."  (ECF No. 121 at 1–2.)  Ms. Ordonez claims that this conduct, taken together, establishes that Mr. Watters acted jointly with the Taylorsville Police Department and is therefore liable under § 1983, along with the Taylorsville Defendants, for depriving her of her constitutional rights.

But Ms. Ordonez presents no evidence of a link between Mr. Watters and the Taylorsville Defendants.  Mr. Watters is not employed by the Taylorsville Police Department.  There is no evidence indicating that Mr. Watters's alleged harassment of Ms. Ordonez was controlled or encouraged by the Taylorsville Police Department, or vice versa.  Mr. Watters is not a private citizen who performs a traditional state function, such as policing.  Because the record and pleadings do not support Ms. Ordonez's state actor argument, the court dismisses any claims relating to Mr. Watters's violation(s) of the constitution.

### B.  State Law Claims Against Mr. Watters

Ms. Ordonez also accuses Mr. Watters of operating a civil conspiracy with the Taylorsville Defendants to "violate [her] civil rights" and "obstruct[] justice."  (ECF No. 62 at 7.)[3]  Because the court has dismissed all claims over which it has federal jurisdiction, the court

---

[3] While the R&R characterized Ms. Ordonez's claim for "violation of court orders" as a state law claim against Mr. Watters (R&R at 16–17), Ms. Ordonez's objection to the R&R clarifies that this claim is directed at the Taylorsville Defendants for misapplying her stalking injunction. (ECF No. 121 at 12.)

declines to exercise supplemental jurisdiction over Ms. Ordonez's state law claims against Mr. Watters.  See 28 U.S.C. § 1367(c)(3).

In any event, the court finds that Ms. Ordonez fails to provide any evidence sufficient to establish the five elements of a civil conspiracy claim: "(1) a combination of two or more persons, (2) [had] an object to be accomplished, (3) [there was] a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts [took place], and (5) damages [were suffered] as a proximate result."  Estrada v. Mendoza, 275 P.3d 1024, 1029 (Utah 2012) (quoting Peterson v. Delta Air Lines, Inc., 42 P.3d 1253, 1257 (Utah 2002)).  As discussed above, Ms. Ordonez has not provided evidence demonstrating that the Taylorsville Defendants engaged in any wrongdoing or unconstitutional deprivation of Ms. Ordonez's rights.  And Ms. Ordonez has not provided any evidence beyond conclusory allegations that the Taylorsville Defendants had a "meeting of the minds" with Mr. Watters.  The court therefore dismisses Ms. Ordonez's civil conspiracy claim.

### III.    Remaining Motions for Summary Judgment

On February 21, 2025, Mr. Watters filed a pro se motion for summary judgment (ECF No. 83), which Ms. Ordonez claims that the court should not consider because it was untimely filed.  (ECF No. 109.)  The court need not address the merits or timeliness of Mr. Watters's motion because, as discussed above, all of Ms. Ordonez's claims against Mr. Watters are dismissed.  The court therefore denies Mr. Watters's motion as moot.

Ms. Ordonez filed her own motion for summary judgment on April 3, 2025, asking the court to grant judgment in her favor against the Taylorsville Defendants.  (ECF No. 97 at 4–10 (arguing that she has met the summary judgment standards on her claims for malicious prosecution, retaliation, abuse of process, civil conspiracy, tampering with evidence, selective

enforcement, and constitutional violations under § 1983).)  But as the court discusses above, all of Ms. Ordonez's claims against the Taylorsville Defendants are dismissed in accordance with the Taylorsville Defendants' motion for summary judgment because no reasonable juror could find for Ms. Ordonez on these claims.  Ms. Ordonez's motion is therefore moot.

But even if any of Ms. Ordonez's claims against the Taylorsville Defendants survived, Ms. Ordonez cannot meet her evidentiary burden as the moving party on summary judgment because her motion contains no citations to the factual record in support of her claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (The party seeking summary judgment carries the initial burden of pointing out to the district court those portions of the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact") (quoting Fed. R. Civ. P. 56(c)).  And while Ms. Ordonez's objections to the R&R contain a few citations to the factual record, there can be no question that this support—even if it were sufficient to prove Ms. Ordonez's case—comes too late to support her motion.  See, e.g., Gibbs v. Massanari, 21 F. App'x 813, 815 (10th Cir. 2001) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").  For these reasons, the court denies Ms. Ordonez's motion for summary judgment.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1.    The court ADOPTS Magistrate Judge Romero's R&R and GRANTS the Taylorsville Defendants' motion for summary judgment.  (ECF No. 76.)

2.    The court ADOPTS Magistrate Judge Romero's R&R and DENIES Mr. Watters's motion for summary judgment as moot.  (ECF No. 83.)

3.     The court ADOPTS Magistrate Judge Romero's R&R and DENIES Ms.

Ordonez's motion for summary judgment.  (ECF No. 97.)

4.     The court DISMISSES all claims with prejudice except for Ms. Ordonez's state

law claims, which are dismissed without prejudice.

DATED this 5th day of September, 2025.

BY THE COURT:

_Tena Campbell_
Tena Campbell
United States District Judge